IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2008 MAY -2 P 3: 32

CLERK'S OFFICE
AT BALTIMORE

DEPUTY

ERROL LEROY LEWIS,

     Petitioner,

v.

UNITED STATES OF AMERICA,

     Respondent.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Civ. No. L-05-1158

Crim. #L-96-0484

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM

Now pending is Errol Lewis's petition to vacate his sentence pursuant to 28 U.S.C. § 2255. Lewis, a/k/a Andrew Campbell, contends that his counsel provided ineffective assistance by, *inter alia*, failing to argue that Lewis's 96-month sentence exceeded the statutory maximum sentence for the indicted offense. Specifically, Lewis notes that, because his indictment did not specify a quantity of marijuana attributable to Lewis as a part of the charged conspiracy, his maximum possible sentence under 21 U.S.C. § 841 (b)(1)(D) was sixty months.

Lewis's § 2255 petition raises a possible Apprendi violation. See Apprendi v. New Jersey, 530 U.S. 466 (2000). Nevertheless, he is entitled to no relief. As demonstrated by Lewis's stipulation to a drug quantity triggering both a 20-year statutory maximum sentence and a Guidelines sentencing range of 87 to 108 months, the evidence justifying the enhanced sentence was overwhelming and essentially uncontroverted. Accordingly, the purported Apprendi error in Lewis's 96-month sentence did not affect the fairness, integrity or public reputation of judicial proceedings, and the Court need not vacate this sentence. For the reasons set forth herein, his petition will be denied and his case dismissed.

C/M CHAMBERS 5-2-08

1

## I.      FACTUAL BACKGROUND

On January 30, 1997, a grand jury in this district issued a Superseding Indictment that charged Lewis with various drug trafficking offenses, including, in Count One, Conspiracy to Possess with Intent to Distribute marijuana in violation of 21 U.S.C. § 846.  As was the practice at that time, Count One did not specify a quantity of marijuana involved in the conspiracy. Because drug quantities were not then routinely included in indictments involving drug offenses, the quantity of drugs attributable to a defendant convicted of participating in a drug conspiracy would be determined by the sentencing judge by a preponderance of the evidence.

Lewis was a fugitive at the time of his indictment.  He remained at large until November 14, 2003, when he was apprehended and taken into custody.  On January 2, 2004, Lewis signed a plea agreement with the government in which he agreed to plead guilty to Count One of the Superseding Indictment.  In the plea agreement, Lewis and the government stipulated to a drug quantity of 400-700 kilograms of marijuana, a base offense level under the Sentencing Guidelines of 28, as well as several upward and downward adjustments based on certain specified Guideline factors.

On February 19, 2004, after an extended Rule 11 colloquy, Lewis pled guilty to Count One of the Superseding Indictment.  At a sentencing hearing that took place on May 19, 2004, the Court sentenced Lewis to 96 months imprisonment.  Under the then-mandatory Sentencing Guidelines, this sentence was based on a Final Offense Level of 29 and a Criminal History Category I.

Lewis did not take a direct appeal.  On April 28, 2005, Lewis timely filed the instant Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255.

## II.     ANALYSIS

2

In his § 2255 petition, Lewis contends that he was denied effective assistance of counsel in the following four ways: (1) his counsel failed to appeal his sentence; (2) his counsel failed to object that Lewis's 96-month sentence exceeded the statutory maximum sentence for the offense charged; (3) his counsel failed to object to the enhanced sentence Lewis received on account of his leadership role in the conspiracy; and (4) his counsel failed to argue that Lewis's indictment should have been dismissed for the government's failure to notify the Jamaican consulate of Lewis's detention.  The Court will address these points in turn.

Lewis's first three contentions raise his Apprendi argument.  In 2003, while Lewis was a fugitive, the Supreme Court handed down the Apprendi decision.  This ruling altered the landscape of federal sentencing practices by holding that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt."  530 U.S. 466, 490 (2003).  After Apprendi, prosecutors began charging a drug quantity in their indictments, and, at trial, judges began requesting juries to make specific drug quantity findings as part of their verdicts.  The Superseding Indictment in this case was handed down six years before Apprendi, and neither counsel nor the Court picked up on the fact that Count One did not allege a drug quantity.

Because Count One does not state a drug quantity foreseeable to Lewis as a participant in the conspiracy, his sentence of 96 months may have violated Apprendi.  This result follows from 21 U.S.C. § 841 (b)(1)(D), which sets a 60-month maximum sentence for distributing less than fifty kilograms of marijuana.[1]  Higher maximum sentences are imposed for larger drug

---

[1] A person who is convicted of a drug trafficking conspiracy is subject to the same penalty prescribed for the offense intended by the conspiracy.  21 U.S.C. § 846 ("Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the

quantities. With respect to marijuana, the statutory maximum increases to twenty years upon conviction of a drug trafficking crime involving fifty kilograms or more. See 21 U.S.C. § 841(b)(1)(C).

Although Lewis stipulated in his plea agreement to a drug quantity of between 400-700 kilograms of marijuana, such an admission does not necessarily cure an Apprendi violation. See U.S. v. Duarte, 246 F.3d 56, 60-61 (1st Cir. 2001) (acknowledging that "Apprendi error may have occurred" where sentence was imposed based on stipulated drug quantity that was not charged in indictment, but noting that it is "arguable that Duarte's admission in the plea agreement to the drug quantity . . . undermines the claim that an Apprendi error occurred."). For purposes of this case, the Court assumes without deciding that Lewis's sentence was imposed in violation of Apprendi. Id. at 61 ("reserve[ing] the question of whether a potential Apprendi violation, arising out of the failure to allege drug quantity in the indictment, can be short-circuited by a showing that the defendant pleaded guilty and admitted to the necessary drug quantity as part of his plea agreement," and assuming, without deciding, that Apprendi violation occurred).

Even assuming an Apprendi violation, however, Lewis is not entitled to relief. Because Lewis did not take a direct appeal, he is entitled to relief under § 2255 only if he can show "cause and actual prejudice resulting from the errors of which he complains or . . . actual innocence by clear and convincing evidence." U.S. v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999). In his motion, Lewis does not maintain his innocence, so the latter prong is inapplicable. In order to establish cause for his default based upon ineffective assistance of counsel, Lewis must show that his attorney's performance fell below an objective standard of

---

same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.").

reasonableness and that he suffered prejudice as a result. Id. Lewis is unable to make this showing.

Lewis maintains that his attorney provided inadequate representation by failing to bring the possible Apprendi violation to the sentencing Court's attention. Under Strickland, a defense attorney's error does not justify relief unless the error actually prejudiced the defendant. Strickland v. Washington, 466 U.S. 668, 688 (1984). Such is not the case here. Had Lewis's counsel spotted the Apprendi violation and notified the Court and opposing counsel, the government would have cured the error by obtaining a Second Superseding Indictment incorporating the requisite drug quantity. Accordingly, Lewis suffered no prejudice for his counsel's failure to notice the Apprendi violation before Lewis was sentenced.

Moreover, even if Lewis had not procedurally defaulted his claims, he would not be entitled to relief under § 2255 because his sentence does not amount to a miscarriage of justice. Id. at 495. As demonstrated by analogous cases from the Supreme Court and the Fourth Circuit Court of Appeals, justice is not offended by an uncorrected Apprendi violation if evidence establishing the necessary drug quantity is overwhelming and essentially uncontradicted. When such cases arise on direct appeal, appellate courts decline to notice the Apprendi error because such error does not "seriously affect the fairness, integrity or public reputation of judicial proceedings." U.S. v. Cotton, 535 U.S. 625, 632-33 (2002); see also U.S. v. Foster, 507 F.3d 233, 252 (4th Cir. 2007) (declining to notice Apprendi error where "the government's overwhelming evidence of the substantial quantities of crack reasonably foreseeable to Foster would have set the maximum sentence at life imprisonment"); U.S. v. Shaw, 313 F.3d 219, 224 (4th Cir. 2002) (declining to notice Apprendi error where "Shaw's stipulation provided an 'uncontroverted' quantity that was sufficient to subject Shaw to a potential life sentence.").

In this case, the record demonstrates beyond peradventure not only that Lewis admitted to a drug quantity that triggered a 20-year maximum, but also that the evidence establishing that quantity was overwhelming and uncontradicted.  Moreover, despite his protestations to the contrary, his 96-month sentence came as no surprise to Lewis.

The plea agreement makes this abundantly clear.  The agreement expressly states that "[t]he parties stipulate and agree that the government's evidence in this case would prove that the defendant knew or could have reasonable foreseen that the conspiracy charged in Count One of the Superseding Indictment involved from at least 400 kilos but less than 700 kilograms of marijuana, resulting in a base offense level of 28 pursuant to U.S.S.G. Section 2D1.1 (c) (6) and 1B1.3 (relevant conduct). "

Attached to the plea letter is a Stipulated Statement of Facts that fully supports the quantity of marijuana attributed to Lewis.  It recites that "the defendant and Nortman [a co-conspirator] were involved in transactions involving the distribution of at least 413 pounds of marijuana between March 20, 1996 and September 28, 1996."  It states that the authorities seized 315 pounds (143 kilos) of marijuana in compressed block form from a stash house used by Lewis and his confederates.  The Statement of Facts describes "owe sheets" memorializing the sale of 480 pounds to various customers.  It identifies a safe deposit box in Lewis's name that contained $164,000, and it describes three guns and ammunition that the police recovered from Lewis's stash house.  It also explains how Lewis played a managerial role in the drug ring by recruiting young women to act as couriers of both drugs and money.[2]

In the plea agreement, which clearly states that the sentencing guidelines apply, Lewis expressly stipulated to the factors that the Court ultimately adopted in determining Lewis's

---

[2]  Lewis admitted that one of the young women was arrested at an airport carrying $95,430, and that two others were arrested with 160 pounds of marijuana in their possession.

sentence.  The agreement explains that "[t]he maximum sentence provided by 21 U.S.C. 841(b)

statute for the offense (Count One) to which your client is pleading guilty is as follows:  20 years

imprisonment without parole."  The agreement goes on to calculate a base offense level of 28

predicated on the stipulated quantity of marijuana.  It provides for a two-level increase pursuant

to 2D1.1(b)(1) "because the conspiracy involved the possession of firearms."  The parties also

agreed to a further two-level increase because Lewis was an "organizer, leader, manager, or

supervisor" in the conspiracy per Guideline section 3B1.1.

     Under the terms of the plea, the parties agreed to jointly recommend at sentencing that

the Court reduce the Offense Level by two levels for acceptance of responsibility under 3E1.1.

Finally, the parties agreed that the government would retain discretion until the sentencing

hearing to decide whether or not to move for the additional one-level downward adjustment for

extraordinary acceptance of responsibility under 3E1.1.  The simple math in the plea agreement

yields an Offense Level of either 30 or 29, depending on whether the government moved for the

discretionary third level.

     Finally, both Lewis and the government waived virtually all rights to appeal the sentence.

Section 8a of the plea letter provides that Lewis and the government "waiv[ed] all rights...to

appeal whatever sentence is imposed, including any issues that relate to the establishment of the

guideline range, reserving only the right to appeal from an upward or downward departure from

the guideline range that is established at sentencing."

     Lewis's two court appearances following his execution of the plea letter make plain that

Lewis was fully informed concerning his plea agreement and the sentence he faced under the

then-mandatory guidelines.  At the Rule 11 hearing on February 19, 2004, Lewis represented that

he had read the plea agreement, that he fully understood it, and that he was fully satisfied with

his attorney.  He acknowledged that he had reviewed and understood the paragraph setting out

the maximum statutory penalty of 20 years.  He knew, he said, that his sentence would be

calculated under the guidelines.  He represented that he understood the guideline calculations

that would, if adopted by the Court, yield a sentencing range higher than 60 months.  The Court

painstakingly reviewed the factual stipulation with Lewis, including the recitation that Lewis

"knew or should have reasonably foreseen that the conspiracy charged in count one of the

superseding indictment involved from at least four hundred kilograms, but less than seven

hundred kilograms of marijuana."  The Court also explained the waiver of appeal.

At the beginning of the Sentencing Hearing on May 19, 2004, the Court announced the

guideline calculations as stated in the pre-sentence report, which calculated Lewis's offense level

as 29 with a criminal history category I.  The Court noted that under those factors, the applicable

guideline range was 87 months to 108 months.  Counsel were then given the opportunity to state

their positions on the appropriate sentence for Lewis.  According to government counsel, the

facts of Lewis's role in the conspiracy merited a sentence of at least 100 months.  Defense

counsel responded that Lewis was entitled to a sentence at the low end of the guideline range.

After Lewis's allocution, the Court formally adopted the guideline calculations as presented in

the pre-sentence report and imposed a sentence of incarceration of 96 months.

According to Lewis's § 2255 motion, Lewis believed that the maximum sentence he

could receive was 60 months, he was expecting a 60 month sentence, and he was surprised when

the Court imposed a higher sentence.  Lewis also alleges that he was upset by the sentence he

received and promptly instructed his counsel to file an appeal.

In light of the record outlined above, these contentions cannot withstand scrutiny.  The

sentencing process was painstakingly explained to Lewis, and the sentence he received came as

no surprise to him.  Although Lewis maintains that he instructed his counsel to appeal, his

defense attorney submitted an affidavit denying Lewis's allegation.[3]  Moreover, an appeal would

have been a futile gesture, as the Fourth Circuit Court of Appeals would almost certainly have

declined to notice the Apprendi violation.

Lewis's § 2255 petition raises a fourth and final argument:  Lewis, who claims to be a

citizen of Jamaica, alleges that his counsel was ineffective for failing to move for dismissal of

the indictment due to the government's failure to notify the Jamaican consular official of his

detention.  This claim cannot succeed.  Lewis does not and cannot demonstrate that the outcome

of his case would have been different had the consular official been notified.  See, e.g., U.S. v.

Ademaj, 170 F.3d 58, 67 (1st Cir. 1999) (affirming conviction where defendant failed to state

how consul would have provided assistance in defense).  Hence, there is no Strickland violation.

## III.   CONCLUSION

For the foregoing reasons, the Court will, by separate order, deny Lewis's § 2255 motion

and direct the Clerk to close the case.

Dated this _____ day of May, 2008.

_____
Benson Everett Legg
Chief Judge

---

[3]   Because Lewis's assertion is incredible, this Court need not hold an evidentiary hearing to
decide the factual dispute.